UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ADMIRAL INSURANCE COMPANY

                                                Docket No.: 7:21-cv-02460-NSR

              Plaintiff,

        -against-

BUILDERS CHOICE OF NEW YORK, INC.
D/B/A UPSTATE ROOFING AND SIDING
AND POLIVIO VALDIVIESO

             Defendants.
-------------------------------------------------------------------X
BUILDERS CHOICE OF NEW YORK, INC.
D/B/A UPSTATE ROOFING AND SIDING

             Third-Party Plaintiff,

        -against-

EVANSTON INSURANCE COMPANY,

             Third-Party Defendant.
-------------------------------------------------------------------X

**DEFENDANT/THIRD-PARTY PLAINTIFF
BUILDERS CHOICE OF NEW YORK INC.'s RESPONSE TO
THIRD-PARTY DEFENDANT EVANSTON INSURANCE COMPANY's
RULE 56.1 STATEMENT OF MATERIAL FACTS
<u>AND COUNTER STATEMENT OF MATERIAL FACTS</u>**

Johnathan C. Lerner, Esq.
Sean F. McAloon, Esq.
LERNER, ARNOLD & Winston, LLP
286 Fifth Avenue, 12th Floor
New York, New York 10001
(212) 686-4655
smcaloon@lawpartnersllp.com
*Attorneys for Defendant/Third-Party Defendant
Builders Choice of New York, Inc., d/b/a
Upstate Roofing and Siding*

## RESPONSE TO ADMIRAL'S RULE 56.1
## STATEMENT OF MATERIAL FACTS

Defendant/Third-Party Plaintiff Builders Choice of New York, Inc., d/b/a Upstate Roofing and Siding ("Builders Choice") respectfully submits its Response to Third-Party Defendant Evanston Insurance Company's ("Evanston") Rule 56.1 Statement of Material Facts, pursuant to F.R.C.P. Rule 56.1.

**A. The Evanston Policy**

1. In the third-party complaint it filed in this action, Defendant/Third-Party Plaintiff Builders Choice of New York, Inc. d/b/a Upstate Roofing and Siding ("Builders Choice") seeks a declaration that Evanston must defend and indemnify Builders Choice in an underlying action captioned Polivio Valdivieso and Marianita Cajamarca v. Noam Estates R LLC, Builders Choice of New York, Inc. and Upstate Roofing & Siding Inc., Supreme Court of the State of New York, County of Orange Index EF004099/2020 (the "Underlying Action"). *See* Third-Party Complaint filed in this action by Builders Choice, ¶¶ 20-29 (D.E. 40).

**RESPONSE: Admit.**

2. Builders Choice seeks defense and indemnification from Evanston as an alleged additional insured on an insurance policy that Evanston issued to Exterior Pro Builders Inc. ("Exterior Pro"). See Third-Party Complaint filed in this action by Builders Choice, ¶¶ 5 & 20 (D.E. 40).

**RESPONSE: Admit.**

3. Evanston issued a general liability policy of insurance to Exterior Pro in effect from May 16, 2019 to May 16, 2020, bearing Policy Number 3AA339548 (the "Evanston policy"). *See* Evanston policy (Ferlazzo Decl. Ex. 1).

2

**RESPONSE: Admit.**

4. The Evanston policy includes an additional insured endorsement, which provides, in pertinent part:

> A. Who Is An Insured is amended to include as an additional insured any person or entity to whom you are required by valid written contract or agreement to provide such coverage, but only with respect to "bodily injury", "property damage" (including "bodily injury" and "property damage" included in the "products-completed operations hazard"), and "personal and advertising injury" caused, in whole or in part, by the negligent acts or omissions of the Named Insured and only with respect to any coverage not otherwise excluded in the policy.

> However:

>   1.    The insurance afforded to such additional insured only applies to the extent permitted by law; and

>   2.    The insurance afforded to such additional insured will not be broader than that which you are required by the valid written contract or agreement to provide for such additional insured.

> Our agreement to accept an additional insured provision in a valid written contract or agreement is not an acceptance of any other provisions of such contract or agreement or the contract or agreement in total.

> When coverage does not apply for the Named Insured, no coverage or defense will apply for the additional insured.

> No coverage applies to such additional insured for injury or damage of any type to any "employee" of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury or damage.

Evanston policy at EIC 88 (Ferlazzo Decl. Ex. 1).

**RESPONSE: Admit.**

**B. Valdivieso is Injured**

5. The Underlying Action arises out of personal injuries Polivio Valdivieso alleges he sustained on February 9, 2020 at a construction project at 10 Quickway Drive, Monroe, New York (the "Site"). *See* Underlying Action Complaint, ¶¶ 19, 28, & 31 (Ferlazzo Decl. Ex. 2).

**RESPONSE: Admit.**

6. Builders Choice was the subcontractor for roofing and siding work for the construction of a new condominium at the Site. *See* Deposition of Builders Choice in the Underlying Action at 17:7-25 (Ferlazzo Decl. Ex. 13).

**RESPONSE: Admit.**

7. Exterior Pro had been retained by Builders Choice to perform a portion of the siding and shingle work at the Site. *See* Deposition of Builders Choice in the Underlying Action at 25:10-27:5 (Ferlazzo Decl. Ex. 13).

**RESPONSE: Admit.**

8. At the time of the incident, Valdivieso was employed by Exterior Pro. *See* Underlying Action Third-Party Complaint, ¶ 10 (Ferlazzo Decl. Ex. 11).

**RESPONSE: Admit.**

9. Valdivieso was injured as a result of the collapse of an entrance doorway roof on which he was standing and installing vinyl shingles. *See* Polivio Valdivieso Dep. Tr. at 43:25- 45:24, 73:14-22, 75:15-22 & 78:2-19 (Ferlazzo Decl. Ex. 12).

**RESPONSE: Admit that this is Valdivieso's testimony but denies knowledge sufficient to form a belief as to the veracity and accuracy of the testimony.**

10. It was safe to stand on the roof when installing the tiles. *See* Manuel Cajamarca Dep. Tr. at 61:22-62:13 (Ferlazzo Decl. Ex. 14).

**RESPONSE: Admit that this is Cajamarca's testimony but denies knowledge sufficient to form a belief as to the veracity and accuracy of the testimony.**

11. Valdivieso's supervisor had been standing on the roof that collapsed for two hours earlier in the day to install some of the tiles. *See* Manuel Cajamarca Dep. Tr. at 59:14-60:19 (Ferlazzo Decl. Ex. 14).

**RESPONSE: Admit that this is Cajamarca's testimony but denies knowledge sufficient to form a belief as to the veracity and accuracy of the testimony.  Further, Cajamarca gave conflicting testimony on this point, because he also testified that he was able to perform all his work on the same roof by standing on a ladder.  See Ferlazzo Decl. Ex. 14 at 59:14 – 60:4.**

12. Exterior Pro's only work at the Site was to repair siding and put shingles on the roofs at the Site. *See* Manuel Cajamarca Dep. Tr. at 32:8-33:8 & 34:22-35:2 (Ferlazzo Decl. Ex. 14).

**RESPONSE: Admit that this is Cajamarca's testimony but denies knowledge sufficient to form a belief as to the veracity and accuracy of the testimony.**

13. Exterior Pro did not build the roof that collapsed. *See* Manuel Cajamarca Dep. Tr. at 32:8-33:8 & 34:22-35:2 & 54:20-55:4 (Ferlazzo Decl. Ex. 14).

**RESPONSE: Admit that this is Cajamarca's testimony but denies knowledge sufficient to form a belief as to the veracity and accuracy of the testimony.**

14. The roof collapsed because it was inadequately built. *See* Manuel Cajamarca Dep. Tr. at 54:20-55:4 (Ferlazzo Decl. Ex. 14).

**RESPONSE: Admit that this is Cajamarca's testimony but denies knowledge sufficient to form a belief as to the veracity and accuracy of the testimony.  Further, Cajamarca testified that he did not see the accident occur.  See Ferlazzo Decl. Ex. 14 at 48:21 – 23; 55:24 – 56:5.**

15. Builders Choice "does not possess any information regarding the facts or cause of the accident which is the subject of the Underlying Action." Builders Choice's Responses to Evanston's Interrogatories at Interrogatory No. 11, p. 7 (Ferlazzo Decl. Ex. 15).

**RESPONSE: Admit.**

16. Before performing work at the Site, Exterior Pro allegedly provided Builders Choice with a certificate of insurance indicating it had been named as an additional insured on the Evanston policy. *See* Certificate of Ins. (Ferlazzo Decl. Ex. 16).

**RESPONSE: Admit.**

17. The certificate that Exterior Pro provided to Builders Choice stated that it was "issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively or negatively amend, extend or alter the coverage afforded by the" Evanston policy. *See* Certificate of Ins. (Ferlazzo Decl. Ex. 16).

**RESPONSE: Admit.**

## C. Valdivieso Commences the Underlying Action

18. On August 3, 2020, Valdivieso and his wife commenced the Underlying Action against Noam Estates R LLC, Upstate Roofing and Siding, Inc. and Builders Choice, asserting that they were "solely" liable for his injuries based on negligence and violations of New York Labor Laws. *See* Underlying Action Complaint, ¶¶ 34, 56 & 80 (Ferlazzo Decl. Ex. 2).

**RESPONSE: Admit.**

19. In the Underlying Action, Builders Choice has filed a third-party complaint against Exterior Pro. *See* Third-Party Complaint in the Underlying Action (Ferlazzo Decl. Ex. 11).

**RESPONSE: Admit.**

20. In its third-party complaint, Builders Choice asserts that Exterior Pro owes Builders Choice contractual indemnification, common-law indemnification and contribution because Exterior Pro's negligence caused Valdivieso's injuries. *See* Third-Party Complaint in the Underlying Action, ¶¶ 17 & 20 (Ferlazzo Decl. Ex. 11).

**RESPONSE: Admit.**

21. Builders Choice does not allege facts in support of its assertions that Exterior Pro owes Builders Choice contractual indemnification, common-law indemnification and contribution because Exterior Pro's negligence caused Valdivieso's injuries. *See* Third-Party Complaint in the Underlying Action, ¶¶ 17 & 20 (Ferlazzo Decl. Ex. 11).

**RESPONSE: Denies this characterization of Builders Choice's Third-Party Complaint in the Underlying Action.**

22. Builders Choice also asserts claims against Exterior Pro for attorneys' fees expended in defending the Underlying Action, and for damages for Exterior Pro's breach of contract in failing to obtain additional insured coverage for Builders Choice. *See* Third-Party Complaint in the Underlying Action, at ¶¶ 22-30 (Ferlazzo Decl. Ex. 11).

**RESPONSE: Admit.**

**D. Evanston Disclaims Coverage for Builders Choice**

23. On November 11, 2020, Exterior Pro provided notice of the Valdivieso's accident to Evanston. *See* Nov. 11, 2020 email (Ferlazzo Decl. Ex. 3).

**RESPONSE: Admit there is an email dated November 11, 2020, but denies knowledge or information sufficient to form a belief as to whether this was Evanston's first notice of the claim.**

24. The notice of occurrence form provided to Evanston stated that Valdivieso was employed by Marley Malla. *See* Notice of Occurrence form (Ferlazzo Decl. Ex. 4).

**RESPONSE: Admit.**

25. The notice of occurrence form provided to Evanston did not state that Valdivieso worked for Exterior Pro. *See* Notice of Occurrence form (Ferlazzo Decl. Ex. 4).

**RESPONSE: Admit that the notice of occurrence form does not specifically state that Valdivieso worked for Exterior Pro.**

26. The notice of occurrence form provided to Evanston did not refer to Builders Choice. *See* Notice of Occurrence form (Ferlazzo Decl. Ex. 4).

**RESPONSE: Admit.**

27. On November 16, 2020, Evanston learned that Valdivieso was employed by Exterior Pro. See Builders Choice's letter to the Court (D.E. 65).

**RESPONSE: Admit there is an email dated November 16, 2020, in which Evanston learned that Valdivieso was employed by Exterior Pro, but denies knowledge or information sufficient to form a belief as to whether this was Evanston's first notice that Valdivieso was employed by Exterior Pro.**

28. On November 18, 2020, Evanston received a copy of a November 2 letter from Admiral Insurance Company ("Admiral"), Builders Choice's commercial general liability insurer, to Exterior Pro, in which Admiral sought additional insured coverage on behalf of Builders Choice. *See* Nov. 18, 2020 email with accompanying Nov. 2 letter (Ferlazzo Decl. Ex. 5).

**RESPONSE: Admit there is an email dated November 18, 2020, in which Evanston received a copy of Admiral's November 2, 2020 tender, but denies knowledge or information**

8

**sufficient to form a belief as to whether this was Evanston's first notice that Admiral and/or**

**Builders Choice were tendering the claim under Exterior Pro's policy.**

29. The documents provided to Evanston as of November 18, 2020 did not include contact information for Builders Choice. *See* Nov. 11, 2020 email; Notice of Occurrence form; and Nov. 18, 2020 email with accompanying Nov. 2 letter (Ferlazzo Decl. Exs. 3, 4 & 5, respectively).

**RESPONSE: Admit that the Nov. 11, 2020, Notice of Occurrence Form and Nov. 18, 2020 email do not contain contact information for Builders Choice. However, the November 2, 2020 tender letter from Admiral, attached to the November 18, 2020 email, does identify Builders Choice as Admiral's insured, and Evanston could have obtained contact information for Builders Choice from Admiral.**

30. On December 1, 2020, Evanston issued a disclaimer of coverage letter addressed to Exterior Pro, with a copy to Admiral. *See* Dec. 1, 2020 disclaimer letter (Ferlazzo Decl. Ex. 6).

**RESPONSE: Admit.**

31. As to Exterior Pro, Evanston disclaimed coverage based on the employer's liability exclusion. *See* Dec. 1, 2020 disclaimer letter at pp. 3-4 (Ferlazzo Decl. Ex. 6).

**RESPONSE: Admit that Evanston issued a disclaimer to Exterior Pro, with a copy to Admiral, and refers to that document for its precise terms.**

32. As to Builders Choice, Evanston disclaimed based on the exclusion barring coverage for any additional insured when there was no coverage for the named insured, and the exclusion barring coverage of an additional insured for an injury to an employee of the named insured. *See* Dec. 1, 2020 disclaimer letter at p. 4 (Ferlazzo Decl. Ex. 6).

**RESPONSE: Admit that Evanston issued a disclaimer to Exterior Pro, with a copy to Admiral, and refers to that document for its precise terms.**

33. On December 7, 2020, Builders Choice, through its counsel, demanded defense and indemnification from Evanston. *See* Dec. 7, 2020 demand letter (Ferlazzo Decl. Ex. 7).

**RESPONSE: Admit.**

34. In response, on December 14, 2020, Evanston sent a copy of its disclaimer letter to Builders Choice's counsel. *See* Dec. 14, 2020 email with accompanying disclaimer letter dated Nov. 27 (Ferlazzo Decl. Ex. 8).

**RESPONSE: Admit.**

35. The date on the letter that Evanston sent to Builders Choice's counsel is November 27, 2020, but it is substantively identical to the disclaimer Evanston issued on December 1, 2020. Compare Nov. 27, 2020 disclaimer letter with Dec. 1, disclaimer letter (Ferlazzo Decl. Exs. 6 & 8, respectively).

**RESPONSE: Admit.**

## BUILDERS CHOICE'S RULE 56.1 COUNTER STATEMENT OF MATERIAL FACTS

Defendant/Third-Party Plaintiff Builders Choice of New York, Inc., d/b/a Upstate Roofing and Siding ("Builders Choice") respectfully submits this Counter Statement of Material Facts, pursuant to F.R.C.P. Rule 56.1.

1.    On or about January 1, 2020, Builders Choice and Exterior Pro Builders entered a "Standard Form of Agreement Between Builders Choice of New York Inc. and Subcontractor" (the "Subcontract Agreement") for Exterior Pro Builders' work at the Premises.  *See* McAloon Dec. at **Exhibit 1**.

2.    "Article 1 INDEMNIFICATION" in the Subcontract Agreement states:

> **ARTICLE I**
> **INDEMNIFICATION**
> 1.1 To the fullest extent permitted by Law, the Subcontractor and its employees shall indemnify and hold harmless the Owner and/or Contractor and employee of

either of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), including Joss of use resulting therefrom, cause in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, Joss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in the Paragraph 1.0.

1.2 In claims against any person or entity indemnified under this Paragraph 1.0 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Paragraph 1.0 shall not be limited by a limitation on amount or type of damages, compensation, or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under Workers' or Workmen's Compensation Acts or other employee benefit acts.

*Id*.

3.    "ARTICLE 2.0 INSURANCE REQUIREMENTS" in the Subcontract Agreement

states:

2.1 The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

Commercial General Liability – including:   $1,000,000 Each Occurrence
Contractual Liability:                $2,000,000 Aggregate, PER PROJECT
Workers Compensation and Employers Liability: $100/500/100 Each Employee

The Owner and/or Contractor are to be named as an additional insured on a primary basis to the Subcontractor's Comprehensive General Liability using appropriate ISO forms that include Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection.

*Id*.

4.    Evanston's claim file demonstrates that, as of November 16, 2020, if not earlier, Evanston knew that Valdivieso was employed by Exterior Pro.  *See* McAloon Dec. at **Exhibit 2** (EIC000385-386).

11

5.      Evanston's policy does not provide coverage for claims of bodily injury to employees of its named insured, Exterior Pro.  *See* Evanston's Rule 56.1 Disclosure at ¶¶ 4, 31.

6.      On November 26, 2020, Evanston contacted Admiral via email to acknowledge receipt of Admiral's November 2, 2020 tender letter, and to request a copy of the "contract."  *See* McAloon Dec. at **Exhibit 3** (EIC000389).

7.      On November 27, 2020, the Evanston adjuster entered a note that stated: "Title: Coverage; Note: Be, NY Disclaimer for your approval, the basis of which is the MEGL 1637 employee exclusion. Admiral tendered for A/I and Indemnity on behalf of their insured, Builders Choice of New York. Coverage is denied to the Named Insured and to Admiral citing the appropriate endorsements."  *See* McAloon Dec. at **Exhibit 3** (EIC000389).

8.      On November 30, 2020, the Evanston adjuster entered a note that stated: "Title: Coverage; Note: Contract between insured and Builders Choice of NY sent by Don Gaines of Admiral is On Base. Exterior Pro is obligated to provide A/I and C/I."  *See* McAloon Dec. at **Exhibit 3** (EIC000389).

9.      Evanston, during its communications with Admiral, could have obtained the contact information for Admiral's insured, Builders Choice, but it did not.

10.     Evanston did not send a copy of its December 1, 2020 disclaimer letter to Builders Choice contemporaneous with sending the disclaimer to Exterior Pro and Admiral, despite its knowledge that the contractors agreement between Builders Choice and Exterior Pro provided that Builders Choice would be named an Additional Insured on the Evanston policy, that Builders Choice was seeking defense and indemnification for the Underlying Action under the Evanston policy, and that Evanston's letter was disclaiming coverage to Builders Choice as an Additional Insured.  *See* Ferlazzo Decl. at Exhibit "6."

11.    Evanston did not send a copy of the December 1, 2020 disclaimer letter to Builders Choice's counsel until December 14, 2020.  *See* Ferlazzo Decl. at Exhibit "8."

12.    Manuel Cajamarca, an employee of Exterior Pro, and the supervisor on the job site on the day Valdivieso was injured testified at a deposition in the Underlying Action.  See Manuel Cajamarca Dep. Tr. (Ferlazzo Decl. Ex. 14).

13.    Cajamarca testified that Valdivieso is married to his sister and is his brother-in-law. *Id* at 8:18 – 9:2.

14.    Cajamarca testified that Exterior Pro had ladders, ropes, hardhats, and harnesses available for its employees on the jobsite on February 9, 2020. *Id* at 35:25 – 36:11; 43:23 – 44:11.

15.    The roof upon which Valdivieso was standing when it allegedly collapsed was 12 – 15 feet above the ground.  *Id* at 60:25 – 61:2.

16.    Despite the height, and despite having ropes and harnesses, Cajamarca did not use ropes or a harness to secure himself because he did not believe it was necessary.  *Id* at 60:20 – 24.

17.    Cajamarca did not direct any of the worker that they needed to wear a harness.  *Id* at 84:17 – 22.

18.    Cajamarca testified that it was not necessary to stand on the roof to complete the work and that the work could have been completed by standing on a ladder.  *Id* at 61:21 – 62:7.

19.    Cajamarca testified that there was nothing preventing him or Valdivieso from positioning the ladder in such a way that they could complete the shingle caps on the roof.  *Id* at 62:14 – 18.

20.    Cajamarca testified that he did not tell Valdivieso not to stand on the roof or to only stand on the ladder, and he would not have told him such, because he himself had been standing on the roof.  *Id* at 78:19 – 79:12.

21.    Cajamarca testified that, as far as he is concerned, it would be safe to install the

shingle caps either standing on the roof or from the ladder.  *Id* at 81:8 – 12.

Dated: New York, New York
          September 26, 2023

Respectfully submitted,

LERNER, ARNOLD & WINSTON, LLP
Attorneys for Builders Choice


By: /s/ Sean F. McAloon
       Sean F. McAloon
       286 Fifth Avenue, 12th Floor
       New York, New York 10001
       (212) 686-4655