```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/12/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────
ADMIRAL INSURANCE COMPANY,

                              Plaintiff,

   -against-

BUILDERS CHOICE OF NEW YORK, INC.
D/B/A UPSTATE ROOFING AND SIDING
AND POLIVIO VALDIVIESO,

                             Defendants.
───────────────────────────────
BUILDERS CHOICE OF NEW YORK, INC.
D/B/A UPSTATE ROOFING AND SIDING,

                          Third-Party Plaintiff,

   -against-

EVANSTON INSURANCE COMPANY,

                          Third-Party Defendant.

No. 21 Civ. 2460 (NSR) (AEK)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Admiral Insurance Company ("Plaintiff" or "Admiral") brings this action against Defendant Builders Choice of New York, Inc. D/B/A Upstate Roofing and Siding ("Defendant," "Third-Party Plaintiff," or "Builders Choice") seeking declaratory judgment that Admiral has no duty to defend or indemnify Builders Choice and may withdraw the defense it provided in an underlying state court action. Builders Choice asserts counterclaims for breach of contract and a declaratory judgment that Admiral must defend and indemnify Builders Choice.

      Third-Party Plaintiff Builders Choice brings an action against Third-Party Defendant Evanston Insurance Company ("Third-Party Defendant" or "Evanston") for a declaratory judgment that Evanston must defend and indemnify Builders Choice in the same underlying state court action.

Presently before the Court are Admiral's, Builders Choice's, and Evanston's motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court (1) grants Builders Choice's motion and denies Admiral's motion in the initial action and (2) grants Evanston's motion and denies Builders Choice's motion in the third-party action.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements, declarations, and exhibits,[1] and are not in dispute, except where noted.

### I. Factual Background

#### A. The Admiral Insurance Policy

Plaintiff Admiral Insurance Company ("Admiral") issued an insurance policy to Builders Choice of New York, Inc. d/b/a Upstate Roofing and Siding ("Builders Choice") for the policy period January 15, 2020 to January 15, 2021 (the "Admiral Policy"). (ECF No. 81, Admiral's Rule 56.1 Statement "Pl. 56.1" ¶ 1.) The Admiral Policy provides that Admiral "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Admiral Policy] applies." (*Id.* ¶ 2 (citing Pl. Ex. H).) The Admiral Policy also includes an endorsement entitled "NO COVERAGE APPLIES IF CONTRACTOR CONDITIONS NOT MET" (the "Contractor Conditions Endorsement"). The Contractor Conditions Endorsement states, in relevant part:

> As a condition precedent to any rights the insured may have under this Policy, the insured must comply with all of the conditions enumerated below. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's

---

[1] Citations to Plaintiff's Exhibits ("Pl. Ex.") refer to exhibits attached to the Declaration of Neil L. Sambursky. (ECF No. 82.) Citations to Third-Party Defendant's Exhibits ("TPD Ex.") refer to exhibits attached to the Declaration of Matthew Ferlazzo. (ECF No. 90.) Citations to Third-Party Plaintiff's Exhibits ("TPP Ex.") refer to exhibits attached to the Declaration of Sean McAloon. (ECF No. 94.)

Citations to the Deposition Transcript of Polivio Valdivieso ("Valdivieso Tr.") refer to TPD Ex. 12 (ECF Nos. 90-12, 90-13). Citations to the Deposition Transcript of Manuel Cajamarca ("Cajamarca Tr.") refer to TPD Ex. 14 (ECF No. 90-15). Citations to the Deposition Transcript of Don Gaines ("Gaines Tr.") refer to Pl. Ex. Q (ECF No. 82-20).

failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

If prior to the commencement of any work, the insured fails to comply with the below conditions, any claim in which a "contractor" whose work directly or indirectly gives rises to the claim will not be payable under this Policy. We will have no obligation to either defend or indemnify the insured for any claims or legal actions brought against any insured.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

**(1)** The "contractor" has signed and executed an agreement with the insured which contains the following provisions:
  **(a)** a hold harmless agreement indemnifying the insured, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and
  **(b)** a requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy;
**(2)** The "contractor" has maintained "adequate insurance";
**(3)** The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and
**(4)** All documents required must be kept on file and made available at our request.

(*Id.* ¶ 3 (citing Pl. Ex. H).)

B.  *Exterior Pro Builders and the Evanston Policy*

On or about January 1, 2020, Builders Choice, a roofing and siding company, retained Exterior Pro Builders ("Exterior Pro"), to perform roofing and siding work for a new condominium site (the "Site"). (Pl. 56.1 ¶¶ 5-6; ECF No. 91, Evanston's Rule 56.1 Statement "TPD 56.1" ¶¶ 6-7.) Exterior Pro only had been hired to repair siding and put shingles on roofs at the Site. (TPD 56.1 ¶ 12.)

Exterior Pro and Builders Choice entered an agreement (the "Subcontract Agreement") for Exterior Pro's work on the Site. (Pl. 56.1 ¶ 6; ECF No. 95, Builders Choice's Rule 56.1 Counterstatement "TPP 56.1(c)" ¶ 1.) The Subcontract Agreement states, in pertinent part:

**ARTICLE I**
**INDEMNIFICATION**

1.1 To the fullest extent permitted by Law, [Exterior Pro] and its employees shall indemnify and hold harmless [Builders Choice] and employee of either of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the [Exterior Pro's] Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), including loss of use resulting therefrom, cause in whole or in part by negligent acts or omissions of the [Exterior Pro], [Exterior Pro's] Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in the Paragraph 1.0.

(Pl. Ex. J at ADM_115.) The Subcontractor Agreement required that Builders Choice "be named as an additional insured on a primary basis" on Exterior Pro's insurance policy. (*Id.* at ADM_115.)

Evanston Insurance Company ("Evanston") had issued a general liability policy to Exterior Pro for the period May 16, 2019 to May 16, 2020 (the "Evanston Policy"). The Evanston policy includes a blanket additional insured endorsement (the "Additional Insured Endorsement"), which states in pertinent part:

Who Is An Insured is amended to include as an additional insured any person or entity to whom you are required by valid written contract or agreement to provide such coverage, *but only with respect to "bodily injury", "property damage"* (including "bodily injury" and "property damage" included in the "products-completed operations hazard"), and "personal and advertising injury" *caused, in whole or in part, by the negligent acts or omissions of the Named Insured* and only with respect to any coverage not otherwise excluded in the policy.

. . .

When coverage does not apply for the Named Insured, no coverage or defense will apply for the additional insured.

4

> No coverage applies to such additional insured for injury or damage of any type to any "employee" of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury or damage.

(TPD Ex. 1 at EIC_88 (emphasis added).)

*C. Plaintiff's Injury and the Underlying Action*

Polivio Valdivieso, an employee of Exterior Pro, had been assigned to work on vinyl siding and shingle roofing at the Site. (Valdivieso Tr. 43:25-45:15; TPD 56.1 ¶ 8.) Valdivieso was injured when the roof he was standing on collapsed while he was installing shingles. (Valdivieso Tr. 73:14-22, 75:15-22, 78:2-19.) On August 3, 2020, Valdivieso and his wife filed a personal injury suit in the Supreme Court of New York, Orange County against Noam Estates R LLC, Upstate Roofing and Siding Inc., and Builders Choice asserting claims for negligence and violation of New York labor laws (the "Underlying Action").[2] (TPD 56.1 ¶ 18; TPD Ex. 2.) In the Underlying Action, Builders Choice filed a third-party compliant against Exterior Pro asserting claims for contractual indemnification, common law indemnification, and contribution on the grounds that Exterior Pro's negligence caused Valdivieso's injuries. (TPD 56.1 ¶ 19.)

Manuel Cajamarca, Valdivieso's supervisor on the Site, testified in the Underlying Action on behalf of Exterior Pro. (TPP ¶ 12; *See* TPD Ex. 14.) Cajamarca testified that the roof collapsed because it was inadequately built. (Cajamarca Tr. 32:8-33:8, 34:22-35:2, 54:20-55:4.) He also testified that (1) the roof Valdivieso was standing on that collapsed was 12-15 feet above the ground; (2) Exterior Pro had ladders, ropes, and harnesses available to employees on the Site; (3) he did not use ropes or a harness to secure himself or direct any other employees to secure themselves using ropes or harness; (4) the siding work could have been completed by standing on

---

[2] The Underlying Action is captioned *Polivio Valdivieso and Marianita Cajamarca v. Noam Estates R LLC, Builders Choice of New York, Inc. and Upstate Roofing & Siding Inc.*, Supreme Court of the State of New York, County of Orange Index EF004099/2020.

a ladder; and (5) he did not direct Valdivieso to not stand on the roof or to stand on the ladder to complete his work. (TPP ¶¶ 14-20.) Finally, Cajamarca testified that shingles may safely be installed from either the roof or the ladder. (*Id.* ¶ 21.)

   D.  *Admiral's Reservation of Rights and Evanston's Disclaimer of Coverage*

Admiral received notice of Builders Choice's claim on August 27, 2020. (ECF No. 85, Builders Choice's Rule 56.1 Counterstatement "Def. 56.1(c)" ¶ 1.) By letter dated September 15, 2020, Admiral acknowledged receipt of the Summons and Complaint in the Underlying Action, agreed to participate in Builders Choice's defense, and reserved its rights pursuant to the terms of the Admiral Policy. (*See* Pl. Ex. L.) In the letter, Admiral reserved its right to, *inter alia*, disclaim coverage, withdraw from any defense, participate in the defense under a reservation of rights, and pursue declaratory relief. (*Id.* at ADM000122.)

By separate letter dated September 15, 2020, Admiral tendered to Exterior Pro the defense and indemnity of Builders Choice in the Underlying Action and sought for Exterior Pro to name Builders Choice as an additional insured under Exterior Pro's policy. (*See* Pl. Ex. M.) On November 2, 2020, Admiral sent a second request to Exterior Pro. (*See* Pl. Ex. N.) On November 11, 2020, Exterior Pro provided notice of Valdivieso's accident to Evanston. (*See* TPD Ex. 3.) The General Liability Notice of Occurrence/Claim Form provided to Evanston did not state that Exterior Pro employed Valdivieso and did not refer to Builders Choice. (TPD 56.1 ¶ 25; TPD Ex. 4.)

On November 16, 2020, Evanston learned that Valdivieso was employed by Exterior Pro. (TPD Ex. 5.) On November 18, 2020, Evanston received a copy of the November 2 letter Admiral sent to Exterior Pro seeking additional insurance coverage for Builders Choice. (*Id.* ¶ 28.) On November 26, 2020, Evanston acknowledged receipt of the November 2 tender letter and requested a copy of the contract from Admiral. (TPP 56.1(c) ¶ 6.) By letter dated December 1, 2020,

Evanston disclaimed coverage to Builders Choice and Exterior Pro for the Underlying Action. (*See* Pl. Ex. O.) In the letter, Evanston stated it denied coverage to Exterior Pro and Builders Choice pursuant to the provisions in the Additional Insured Endorsement that precludes coverage (1) to the additional insured for bodily injury to an employee of the named insured and (2) to an additional insured when there was no coverage to the named insured. (TPD ¶ 32 (citing TPD Ex. 6); Pl. Ex. O at ADM_128.) Exterior Pro was barred from coverage because Valdivieso was its employee. (*Id.* at ADM_128-129.) Because no coverage extended to Exterior Pro, Evanston disclaimed coverage to Builders Choice as an additional insured. (*Id.*) Evanston sent the disclaimer letter to Exterior Pro and Admiral. (*See id.* at ADM_126, ADM_131.)

    *E. Admiral and Builders Choice Respond to Evanston's Disclaimer Letter*

On December 7, 2020, Admiral received Evanston's disclaimer letter. (Pl. 56.1 ¶ 22.) That same day, upon receipt of Evanston's disclaimer letter, Admiral referred the matter to coverage counsel for review. (Pl. 56.1 ¶ 33.) By letter dated January 7, 2021, Admiral disclaimed coverage to Builders Choice for breach of the Contractor Conditions Endorsement. (*See* Pl. Ex. P.) Admiral determined that Exterior Pro lacked "adequate insurance" as defined in the Contractor Conditions Endorsement. (*Id.* at ADM_137.) Donald Gaines, a Senior Claims Superintendent for Admiral, testified that any disclaimer from a subcontractor's insurance carrier would trigger a violation of the endorsement. (Def. 56.1(c) ¶ 6 (citing Gaines Tr. 28:10-29:2).)

On December 7, 2020, Builders Choice, through its counsel, demanded defense and indemnification from Evanston. (TPD 56.1 ¶ 33.) In response, on December 14, 2020, Evanston sent a copy of its disclaimer letter to Builders Choice's counsel. (*Id.* ¶ 34.) The date on that letter is November 27, 2020; however, it is substantively identical to the disclaimer Evanston issued on December 1, 2020. (*Id.* ¶ 35.)

7

## II. Procedural History

On March 17, 2021, Admiral commenced the action by filing its Complaint against Builders Choice and Valdivieso seeking a declaratory judgment that it has no duty to defend or indemnify Builders Choice and that it may withdraw from its defense of Builders Choice in the Underlying Action. (*See* ECF No. 1.) On April 6, 2021, Admiral amended its complaint. (ECF No. 10.) On July 7, 2021, Builders Choice filed its Answer and asserted counterclaims against Admiral for breach of contract and a declaratory judgment that Admiral is obligated to defend and indemnify it in the Underlying Action. (ECF No. 20.) Admiral filed its Answer to Builders Choice's counterclaims on August 30, 2021. (ECF No. 23.) As of the date of this Opinion & Order, Valdivieso has not appeared in the action.

On July 21, 2022, Builders Choice filed its third-party complaint against Evanston seeking a declaratory judgment that Builders Choice is an additional insured, and that Evanston must defend and indemnify Builders Choice in the Underlying Action. (ECF No. 40.) Evanston filed its Answer to the Third-Party Complaint on October 25, 2022. (ECF No. 53.) On June 12, 2023, the Court granted the parties leave to file their respective motions for summary judgment. The parties fully briefed their motions on November 30, 2023.[3]

---

[3] In the initial action, Admiral filed its Notice of Motion for Summary Judgment (ECF No. 79), Memorandum of Law in Support ("Pl. Mem.," ECF No. 80), and Memorandum of Law in Opposition and Reply ("Pl. Opp. and Reply," ECF No. 86). Attached as Exhibit A to Admiral's Opposition and Reply is the Declaration of Donald Gaines. ("Gaines Decl.," ECF No. 86-1.) Builders Choice filed its Cross-Motion for Summary Judgment (ECF No. 83) and Memorandum of Law in Support and Opposition ("Def. Mem. and Opp.," ECF No. 84).

In the third-party action, Evanston filed its Notice of Motion for Summary Judgment (ECF No. 89), Memorandum of Law in Support ("TPD Mem.," ECF No. 89), and Reply Memorandum of Law and Opposition ("TPD Reply and Opp.," ECF No. 96). Builders Choice filed its Cross-Motion for Summary Judgment (ECF No. 92), Memorandum of Law in Support and Opposition ("TPP Mem. and Opp.," ECF No. 93), and Reply ("TPP Reply," ECF No. 98).

**STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (internal quotations and citations omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v.*

9

*Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (citations omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

### I. Admiral's Motion for Summary Judgment and Builders Choice's Cross Motion

Admiral seeks summary judgment from the Court (1) declaring that Admiral has no duty to defend or indemnify Builders Choice in the Underlying Action; (2) declaring that Admiral may withdraw from the defense being provided to Builders Choice in the Underlying Action; and (3) dismissing Builders Choice's counterclaims. Builders Choice seeks summary judgment on its counterclaims for breach of contract and a declaratory judgment that Admiral must defend and indemnify Builders Choice in the Underlying Action.

Admiral argues summary judgment in its favor is appropriate because Builders Choice did not comply with a condition precedent to coverage pursuant to the Admiral Policy. The Contractor Conditions Endorsement required any contractor hired by Builders Choice to have "adequate insurance." Evanston disclaimed coverage to Exterior Pro, therefore Exterior Pro did not have insurance coverage for the work it performed for Builders Choice. (*See* Pl. Exs. O and P.)

10

Accordingly, Exterior Pro did not have adequate insurance. Builders Choice does not directly challenge these arguments. Instead, Builders Choice argues Admiral's disclaimer is invalid because Admiral failed to timely disclaim coverage pursuant to New York Insurance Law § 3420 ("Section 3420") and seeks summary judgment on that ground. Admiral and Builders Choice thus put one question before the Court: was Admiral's 31-day delay in disclaiming coverage to Builders Choice unreasonable as a matter of law?[4]

Section 3420(d) provides that an insurer must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y. Ins. Law § 3420. "A failure by the insurer to give notice as soon as is reasonably possible after it first learns of the accident or the grounds of liability or denial of coverage, precludes effective disclaimer or denial." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir.), *certified question accepted*, 2 N.Y.3d 787, 812 N.E.2d 1259 (2004), and *certified question answered*, 3 N.Y.3d 592, 822 N.E.2d 777 (2004) (citing *Hartford Ins. Co. v. Nassau Cnty.*, 46 N.Y.2d 1028, 1029, 389 N.E.2d 1061 (1979)). As there is no "fixed yardstick against which to measure the reasonableness of delay in providing notice," the reasonableness of a notice of disclaimer is a question of fact "dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage." *Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 18 (S.D.N.Y. 2022) (citing *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 769 N.Y.S.2d 459, 801 N.E.2d 835, 838-39 (2003)).

---

[4] Builders Choice also attempts to base its untimely notice argument on the 57-day delay between Admiral first sending its tender letter to Exterior Pro on September 15 and Evanston receiving notice of the accident from Exterior Pro on November 11. (Builders Choice Mem. at 6-7.) However, Builders Choice cites no case law contrary to the rule that timeliness of an insurer's disclaimer is measured "from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 18 (S.D.N.Y. 2022) (citing *First Fin. Ins. Co.*, 769 N.Y.S.2d 459, 801 N.E.2d at 839-840).

The timeliness of an insurer's disclaimer is measured "from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *Id.* (citing *First Fin. Ins. Co.*, 769 N.Y.S.2d 459, 801 N.E.2d at 839-840). "An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." *Netherlands Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 106 (S.D.N.Y. 2017) (citing *First Fin. Ins. Co.*, 769 N.Y.S.2d 459, 801 N.E.2d at 839). "An insurer's investigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer." *Peleus Ins. Co.*, 587 F.Supp.3d at 18. (citing *First Fin. Ins. Co.*, 769 N.Y.S.2d 459, 801 N.E.2d at 839)). However, an insurer's explanation for delayed notice is insufficient "where the basis for denying coverage was or should have been readily apparent to the insurer even before the onset of the delay." *New York Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 755 (2d Cir.), *certified question accepted sub nom. First Fin. Ins. Co. v. Jetco Contracting Corp.*, 99 N.Y.2d 649, 790 N.E.2d 272 (2003), and *certified question answered sub nom. First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 801 N.E.2d 835 (2003) (collecting cases). Where "any added information that the insurer could have learned from further investigation did not affect the insurer's decision to deny coverage in the first place, any delay in notification based on such extra investigation is unreasonable as a matter of law." *Id.* (citations omitted).

In this case, notice was delayed by 31 days. Admiral received Evanston's disclaimer letter on December 7, 2020 and disclaimed coverage to Builders Choice by letter dated January 7, 2020. Builders Choice argues Admiral had an immediate basis to deny the claim when it received Evanston's disclaimer. The disclaimer informed Admiral that Exterior Pro did not have adequate insurance and as a result, Builders Choice failed to satisfy the condition precedent to coverage. (Def. Mem. and Opp. at 7-8.) According to Builders Choice, Admiral did not need to conduct any

further investigation. (*Id.*) To explain or excuse its delay, Admiral argues that it "retained coverage counsel given the complexity of the issues, including but not limited to, Evanston's disclaimer position, the facts, and the state of the law concerning potential application of the Contractor Conditions Endorsement." (Pl. Opp. and Reply at 3; *see* Gaines Decl. ¶ 9.) Primarily, Admiral relies on Builders Choice's assertion that "case law interpreting the Contractor Conditions Endorsement is scant," as well as the fact that it immediately retained coverage counsel. (*Id.* at 7; Gaines Decl. ¶ 9.)

The Contractor Conditions Endorsement explicitly provides that any contractor hired by the insured must have "adequate insurance" as a condition precedent to coverage. (Pl. Ex. H at ADM_73-74.) Admiral undisputedly disclaimed coverage to Builders Choice due to its failure to satisfy that condition. (*See* Ex. P at ADM_137; Gaines Tr. 25:3-8 (testifying Admiral denied coverage because "the subcontractor's policy did not provide adequate insurance").) There is no evidence that Admiral doubted or even questioned whether the condition would apply. Nor does Admiral present evidence to suggest that it would have denied coverage on any other basis.

Moreover, as Builders Choice observes, Admiral even anticipated denying coverage on that basis. (Def. Mem. and Opp. at 10.) Admiral directly cites to the Contractor Conditions Endorsement in its reservation of rights letter. (*See* Pl. Ex. L at ADM_120-122.) Furthermore, Donald Gaines, a Senior Claims Superintendent for Admiral, testified that any disclaimer from a subcontractor's insurance carrier would trigger a violation of the endorsement. (Gaines Tr. 28:10-29:2.) Based on the evidence in the record, the Court agrees with Builders Choice—upon Admiral's receipt of Evanston's disclaimer, no further investigation was necessary.

Admiral fails to explain why it would need to consider the "scant" case law interpreting the Contractor Conditions Endorsement. While it is always prudent to prepare for a possible legal

challenge, Admiral fails to persuade the Court that it needed to retain counsel for such an analysis in these circumstances. Admiral ultimately fails to identify the "complex" issues raised by Builders Choice's claim or how case law research or additional facts may have influenced its decision to disclaim. Moreover, Admiral presents no evidence to suggest that its investigation or any legal work by retained counsel influenced its decision to disclaim coverage.

The New York Court of Appeals has found "no material difference between a delay that is unexplained and a delay that is unexcused." *First Fin. Ins. Co.*, 769 N.Y.S.2d 459, 801 N.E.2d at 840. The cursory reasons Admiral provided for delay ultimately had no impact on its decision to disclaim coverage for failure to comply with the Contractor Conditions Endorsement. *See Id.* at 839 (delay to explore other sources of insurance for the insured unreasonable because excuse "unrelated to the insurer's own decision to disclaim); *McAlpin v. RLI Ins. Co.*, 509 F. Supp. 2d 242, 251-52 (W.D.N.Y. 2007) (delayed notice unreasonable as a matter of law where insurer waited to provide notice in order to conduct an investigation into matters that ultimately played no role in the insurer's decision to deny coverage); *NGM Ins. Co. v. 52 Liberty*, No. 09-CV-9003 (JSG), 2010 WL 650383, at *6 (S.D.N.Y. Dec. 6, 2020) (same). Because Admiral fails to provide a sufficient explanation for its delay, the Court finds Admiral failed to provide timely notice pursuant to Section 3420(d).[5] Even viewing the evidence in the light most favorable to Admiral, the Court finds Admiral's disclaimer is invalid as a matter of law. The Court denies Admiral's motion for summary judgment and grants Builders Choice's motion for summary judgment.

---

[5] New York state courts have found a 31-day delay in providing notice unreasonable. *United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 343 (E.D.N.Y. 2018) ("New York courts have consistently found unreasonable unexplained delays as short as one to two months.") (collecting cases); *see also W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*, 290 A.D.2d 278, 736 N.Y.S.2d 34, 35 (2002) (thirty days).

**II. Evanston's Motion for Summary Judgment and Builders Choice's Cross Motion**

Evanston seeks summary judgment declaring that Builders Choice is not entitled to defense and indemnification in the Underlying Action because (1) Builders Choice is not an additional insured under the Evanston Policy and (2) the employee exclusion provision applies to bar coverage for Builders Choice. Builders Choice cross-moves for summary judgment declaring that Evanston owes Builders Choice a duty to defend and indemnify. Specifically, Builders Choice argues Evanston failed to timely disclaim coverage. The Court addresses Evanston's motion for summary judgment first.

*A. Whether Builders Choice is an Additional Insured*

The Evanston Policy provides coverage to an additional insured "only with respect to 'bodily injury', 'property damage' (including 'bodily injury' and 'property damage' included in the 'products-completed operations hazard'), and 'personal and advertising injury' *caused, in whole or in part, by the negligent acts or omissions of the Named Insured*." (TPD Ex. 1 at EIC_88 (emphasis added).) Evanston argues Builders Choice is not an additional insured because it cannot establish that Valdivieso's injury was caused by Exterior Pro's negligent acts or omissions. (TPD Mem. at 7.) As proof, Evanston points to (1) the pleadings in the Underlying Action wherein Valdivieso does not assert any allegations against Exterior Pro and (2) Builders Choice's third-party complaint as it asserts "only conclusory allegations, devoid of actual support" that Exterior Pro caused Valdivieso's injuries. (*Id.* at 12-13.)

"Where an insurance policy is restricted to liability for any bodily injury caused . . . by the 'acts or omissions' of the named insured, as here, the coverage applies to injury proximately caused by the named insured." *Consol. Edison Co. of New York, Inc. v. ACE Am. Ins. Co.*, 673 F. Supp. 3d 475, 487 (S.D.N.Y. 2023) (citing *Burlington Ins. Co.*, 29 N.Y.3d at 317, 57 N.Y.S.3d 85, 79 N.E.3d 477) (cleaned up). Builders Choice therefore is only protected from vicarious liability for

15

Exterior Pro's negligence.[6] *Id.* at 475 (citing *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 19-CV-1355 (AJN), 2021 WL 797670, at *3 (S.D.N.Y. Mar. 1, 2021), in turn citing *Burlington Ins. Co.*, 29 N.Y.3d at 326, 57 N.Y.S.3d 85, 79 N.E.3d 477)).

Valdivieso's pleadings in the Underlying Action do not raise a reasonable possibility that Exterior Pro's negligence caused Valdivieso's injuries. (*See* TPD Exs. 2, 9, 10.) Builders Choice does not directly dispute this fact. Nor could it. Neither Valdivieso's Complaint, First Amended Complaint, or Second Amended Complaint mention Exterior Pro by name, and he attributes his injuries to the negligence of Noam Estates R LLC, Builders Choice, and Upstate Roofing and Siding Inc. (*See generally id.*) In its third-party complaint filed in the Underlying Action, Builders Choice alleges that to extent it is held liable for Valdivieso's injuries, such liability will have been caused by the negligence of Exterior Pro. (TPD Ex. 11 ¶¶ 17, 20.) The third-party complaint, however, lacks any factual allegations to support this assertion. Builders Choice's conclusory assertions fail to give rise to a duty to defend or indemnify.

Builders Choice fares no better when considering evidence outside the pleadings. To establish Exterior Pro's negligence, Builders Choice argues that Cajamarca, a supervisor for Exterior Pro, failed to ensure his workers followed proper safety precautions. (TPP Mem. and Opp. at 12.) However, Builders Choice cites to no evidence in the record that indicates Exterior Pro may have been the proximate cause of Plaintiff's injury. Builders Choice contends that the *absence* of Exterior Pro's liability is not as clear as Evanston makes it seem. (TPP Mem. and Opp. at 12.) But this argument falls far short of presenting any *actual* evidence of Exterior Pro's negligence.

On the day of the accident, Valdivieso, an employee of Exterior Pro, had been assigned to work on vinyl siding and shingle roofing. (Valdivieso Tr. 43:25-45:15.) Valdivieso was injured

---

[6] Accordingly, the Court's analysis is not impacted by Valdivieso asserting in the Underlying Action violations of the New York Labor Law, which may impose strict liability on Exterior Pro.

when the roof he was standing on collapsed while he was installing shingles. (*Id.* 73:14-22, 75:15-22, 78:2-19.) Builders Choice offers no testimony or other evidence to refute Cajamarca's testimony that (1) Exterior Pro's only job on the Site was to repair siding and install shingles; (2) that a worker may safely install shingles from either the roof or the ladder; or (3) that the roof collapsed because it was inadequately built. (Cajamarca Tr. 61:22-62:13.). Accordingly, Builders Choice presents no evidence for the cause of the roof collapse, and certainly no evidence tying the cause of the collapse to any actions by Exterior Pro.

Instead, Builders Choices points to Cajamarca's testimony that (1) Exterior Pro had ladders, ropes hardhats, and harnesses available for employees on the Site; (2) Cajamarca did not use ropes or harnesses to secure himself or direct employees to secure themselves on the roof located 12-15 feet above the ground; (3) that it was not necessary to stand on the roof to complete the work and the work could have been completed by standing on the ladder; (4) there was nothing preventing Valdivieso from using the ladder to install the shingles; and (5) Cajamarca did not tell Valdivieso not to stand on the roof. As Evanston observes, however, Builders Choice "cites no evidence (fact or expert)" that Valdivieso should have used the ladder or used ropes or harnesses to secure himself while performing his work. (TPD Opp. and Reply at 3.) The Court agrees that these "naked arguments" (*id.*) are insufficient to create an issue of fact.

Builders Choice's attempts to distinguish *LM Insurance* also fail. In that case, Guzman, an employee of PMB, the named insured, was injured while cleaning a revolving glass door when a glass panel detached and fell on her. *LM Ins. Corp. v. Fed. Ins. Co.*, 585 F. Supp. 3d 493, 501 (S.D.N.Y. 2022). The employee sued Old Slip, the owner of the building, and BNY, the lessee of the floor where the injury occurred, who in turn asserted third-party claims and cross-claims against PMB, alleging PMB's negligence caused Guzman's injuries. The Court determined that

PMB's insurer had no duty to defend Old Slip or BNY as additional insureds because neither PMB or Guzman owned the door or oversaw maintenance of the door. *Id.* at 501. The Court specifically rejected arguments that PMB may have proximately caused Guzman's injuries because Guzman "failed to look for defects, or was cleaning the door in an unsafe manner." *Id.* at 500. Ultimately, the Court concluded that "[t]he underlying pleadings simply show that PMB, at most, merely furnished the occasion for the injury." *Id.* (citing *Pioneer*, 86 N.Y.S.3d at 366). The Court finds the same is true here. As in *LM Insurance*, "[n]one of the undisputed facts or inferences lead to the conclusion that [Exterior Pro] may have been the proximate cause of [the roof collapse]." *Id.* at 501.

Neither the pleadings nor the record implicates Exterior Pro's actions. Accordingly, Builders Choice fails to show that Exterior Pro did anything more than "merely furnish[] the occasion for the injury." *Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.*, 165 A.D.3d 1646, 1648, 86 N.Y.S.3d 364, 366 (2018) (citations omitted). Because the underlying pleadings raise no reasonable possibility that Exterior Pro caused Valdivieso's injuries, the Court finds Builders Choice is not an additional insured under the Evanston Policy. The Court thus grants summary judgment in favor of Evanston. Because Builders Choice is not covered under the Evanston Policy, Evanston was not required to timely disclaim coverage. *See Pioneer Cent. Sch. Dist.*, 165 A.D.2d at 1648, 86 N.Y.S.3d at 367. The Court thus denies Builders Choice's cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff Admiral's motion for summary judgment is DENIED and Defendant Builders Choice's cross-motion for summary judgment is GRANTED.

Third-Party Defendant Evanston's motion for summary judgment is GRANTED and Third-Party Plaintiff Builders Choice's cross-motion for summary judgment is DENIED.

The Clerk of Court is directed to (1) enter judgment in favor of Defendant Builders Choice in the initial action; (2) enter judgment in favor Third-Party Defendant Evanston in the third-party action; and (2) terminate the third-party action.

The Clerk of Court is further directed to terminate the motions at ECF Nos. 79, 83, 88, and 92.

Dated:   September 12, 2024                                  SO ORDERED:
        White Plains, New York

                                                                           NELSON S. ROMÁN
                                                                   United States District Judge